| | |
|---|---|
| STATE OF CONNECTICUT : | **FILED UNDER SEAL** |
| : | ss: New Haven, Connecticut |
| COUNTY OF NEW HAVEN : | March 7, 2017 |

## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT

I, James P. Formica, being duly sworn, depose and state as follows:

### INTRODUCTION

1.  I am a Special Agent with the Food and Drug Administration Office of Criminal Investigations ("FDA-OCI") of the Department of Health and Human Services and have been so employed for over two years. My function as a Special Agent is to investigate violations of the Federal Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. § 301 *et seq.*, along with other relevant crimes. Prior to my employment at FDA-OCI, I was a Special Agent with Internal Revenue Service Criminal Investigation for over 12 years. I have executed numerous search warrants for personal and business records relevant to ongoing criminal investigations.

2.  I am currently investigating one or more individuals who are engaged in a scheme to sell, distribute, and dispense prescription drugs over the Internet through a network of websites referred to herein as the RXPHARMA group (the "Target Websites") and to deliver those prescription drugs to customers, including customers in the United States, without the issuance of valid prescriptions, in violation of 21 U.S.C. §§ 331(a) and 333(a) (introduction of misbranded drugs into interstate commerce), 21 U.S.C. §§ 841(h) and 829(e) (delivering, distributing or dispensing controlled substances by means of the internet), 21 U.S.C. § 846 (conspiracy to violate the Controlled Substances Act), 18 U.S.C. § 545 (smuggling goods into the United States), 18 U.S.C. § 371 (conspiracy), and 18 U.S.C. § 1956(a)(1) (money laundering) (collectively, the "TARGET OFFENSES").

3.  I make this affidavit in support of Applications for Search Warrants for information associated with the following email accounts (the "TARGET EMAIL ACCOUNTS") that are



stored at premises controlled either by Microsoft Corporation ("Microsoft"), an email provider located at One Microsoft Way, Redmond, WA  98052; Google Inc. ("Google"), an e-mail provider located at 1600 Amphitheatre Parkway in Mountain View, California 94043; AOL Inc. ("AOL"), an e-mail provider located at 22000 AOL Way, Dulles, Virginia 20166; or Yahoo! Inc. ("Yahoo"), an e-mail provider located at 701 First Avenue, Sunnyvale, California 94089 (collectively, the "Providers" and each a "Provider") as indicated below:

| Email Address | Provider |
|---|---|
| wondertechnology@aol.com | AOL |
| Networktech12@hotmail.com | Microsoft |
| ramonaenibarra@gmail.com | Google |
| M07smith@gmail.com | Google |
| 01bifftannen@gmail.com | Google |
| juancarlosrios1959@gmail.com | Google |
| smilepayments@gmail.com | Google |
| Bifftannen01@yahoo.com | Yahoo |
| Jimmy_le5252@yahoo.com | Yahoo |

4. This affidavit is made in support of Applications for Search Warrants under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require the Providers to disclose to the government copies of the information (including the content of communications) further described in Section I of Attachment A.  Upon receipt of the information described in Section I of Attachment A, government-authorized persons will review that information to locate the items described in Section II of Attachment A.

5. Based on the information set forth in this affidavit, I believe there is probable cause to believe that the TARGET EMAIL ACCOUNTS constitute and contain items that constitute instrumentalities, fruits, and evidence of the TARGET OFFENSES and are specified in Section II of Attachment A.

6. The statements contained in this affidavit are based in part on information provided by other members of local, state, and federal law enforcement, my own investigation to include personal observations, documents and other investigative materials which I have



reviewed, as well my training and experience as a Special Agent. Since this affidavit is being submitted for the limited purpose of securing search warrants, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that evidence, fruits, and instrumentalities of the TARGET OFFENSES are located within the TARGET EMAIL ACCOUNTS.

## JURISDICTION

7.      This Court has jurisdiction to issue the requested warrants for the TARGET EMAIL ACCOUNTS pursuant to 18 U.S.C. §§ 2703(a), (b)(1)(A) and (c)(1)(A) because this Court is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. Specifically, the Court is "a district court of the United States . . . that– has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## APPLICABLE LAW

8.      Under 21 U.S.C. § 331(a), it is unlawful to introduce or deliver for introduction into interstate commerce any drug that is misbranded. Under 21 U.S.C. § 353(b)(1), a prescription drug is misbranded if it is dispensed without a prescription. A violation of 21 U.S.C. § 331(a) is subject to criminal penalties under 21 U.S.C. § 333(a).

9.      Under 21 U.S.C. § 841(h), it is unlawful "to deliver, distribute, or dispense a controlled substance by means of the Internet," except as authorized under the Controlled Substances Act. Similarly, under 21 U.S.C. § 829(e), "No controlled substance that is a prescription drug . . . may be delivered, distributed, or dispensed by means of the Internet without a valid prescription[,]" which is defined in relevant part as one "issued for a legitimate medical purpose in the usual course of professional practice by . . . a practitioner who has conducted at least 1 in-person medical evaluation of the patient...."

10.     Under 21 U.S.C. § 846, it is unlawful to conspire to commit an offense in violation of the Controlled Substances Act, which includes 21 U.S.C. §§ 841 and 829.

3

11. Under 18 U.S.C. § 545, it is unlawful to knowingly import into the United States, any merchandise contrary to law.

12. Under 18 U.S.C. § 371, it is unlawful to conspire to commit an offense against the United States.

13. Under 18 U.S.C. § 1956(a)(1), it is unlawful to conduct a financial transaction involving proceeds of specified unlawful activity in order to, among other things, promote the carrying on of specified unlawful activity or conceal or disguise the nature, location, source, ownership or control of such proceeds. The term "conducts" is defined to include initiating, conducting, or participating in initiating, or concluding a transaction. The term "specified unlawful activity" includes violations of 21 U.S.C. §§ 841, 849, and 18 U.S.C. § 545.

## BACKGROUND ON EMAIL ACCOUNTS

14. In my training and experience, I have learned that the Providers offer a variety of on-line services, including electronic mail ("e-mail" or "email") access, to the public. Subscribers obtain an account by registering with the Provider. During the registration process, a Provider typically requires subscribers to provide basic personal information. Therefore, a Provider's computers are likely to contain stored electronic communications (including retrieved and unretrieved e-mail for subscribers) and information concerning subscribers and their use of the Provider's services, such as account access information, e-mail transaction information, and account application information. In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

15. In general, an e-mail that is sent to a subscriber is stored in the subscriber's "mail box" on the Provider's servers until the subscriber deletes the e-mail. If the subscriber does not delete the message, the message can remain on the Provider's servers indefinitely.

16. When the subscriber sends an e-mail, the Provider often saves a copy of the e-mail that is sent. Unless the sender of the e-mail specifically deletes the e-mail from the Provider's server, the e-mail can remain on the system indefinitely.

17. A sent or received e-mail typically includes the content of the messages, source and destination addresses, the date and time at which the email was sent or received, and the size and length of the e-mail. If an e-mail user writes a draft message but does not send it, that message may also be saved.

18. In addition to e-mails, a subscriber can also store with a Provider files such as address books, contact or buddy lists, calendar data, pictures (other than ones attached to e-mails), and other files, on servers maintained and/or owned by the Provider. In my training and experience, evidence of who was using an e-mail account may be found in address books, contact or buddy lists, e-mail in the account, and attachments to e-mails, including pictures and files.

19. In my training and experience, the Providers generally ask their subscribers to provide certain personal identifying information when registering for an e-mail account. Such information can include the subscriber's full name, physical address, telephone numbers and other identifiers, alternative e-mail addresses, and, for paying subscribers, means and source of payment (including any credit or bank account number). In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

20. In my training and experience, the Providers typically retain certain transactional information about the creation and use of each account on their systems. This information can include the date on which the account was created, the length of service, records of log-in (i.e., session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via the provider's website), and other log files that reflect usage of the



account. In addition, e-mail providers often have records of the IP address[1] used to register the account and the IP addresses associated with particular logins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the e-mail account.

21. In my training and experience, in some cases, e-mail account users will communicate directly with a Provider about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users. The Providers typically retain records about such communications, including records of contacts between the user and the provider's support services, as well records of any actions taken by the provider or user as a result of the communications. In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

## BACKGROUND ON LEGITSCRIPT

22. LegitScript is an internet pharmacy verification service that compiles information regarding regulated healthcare products offered over the Internet. The company, which was founded in 2007 by a former employee of the Office of National Drug Control Policy, has been retained by various businesses and government agencies. In addition, LegitScript is endorsed by the National Association of Boards of Pharmacy. The FDA has a contract with LegitScript for its services. In my experience, information provided by LegitScript has proven reliable.

---

[1] "Internet Protocol address" or "IP address" refers to a unique number used by a computer to access the Internet.



## THE INVESTIGATION AND PROBABLE CAUSE

23.  In February 2015, agents with the FDA-OCI and U.S. Drug Enforcement Administration ("DEA") initiated an investigation into the online pharmacy advertising practices of 7Search.com ("7Search"). 7Search is a Pay-Per-Click network connecting advertisers who want to reach targeted online audiences with online publishers who want advertisers to occupy their open ad positions. 7Search was advertising on-line pharmacies that were selling prescription drugs, including controlled substances, to customers in the United States without a prescription. Advertisers who wish to advertise through 7Search's network must register and create an account on 7Search's website and provide certain contact information, including an email address. Advertisers must also send payments to 7Search to fund their advertising campaigns.

24.  In June 2016, agents from FDA-OCI and DEA executed a federal search warrant at the offices of 7Search in Des Plaines, Illinois, based on probable cause related to violations of Title 21 U.S.C. § 331(a), Title 21 U.S.C. § 331(d), Title 21 U.S.C. § 333(a), Title 21 U.S.C. § 841(a), Title 21 U.S.C. § 841(h), Title 18 U.S.C. § 545, Title 18 U.S.C. § 1956, and Title 18 U.S.C. § 2320(a)(4).

25.  After the search warrant was conducted at the offices of 7Search, I reviewed business records of 7Search establishing that several of the Target Websites advertised with 7Search. Based on the 7Search records, agents from FDA-OCI and DEA began an investigation of individuals operating the Target Websites.

26.  According to 7Search records, rx-pharma24.com is a website used by the RXPHARMA group. The website advertises the sale of numerous drugs without a prescription. Included in those drugs for sale are several DEA Schedule IV drugs like Tramadol, Xanax, Klonopin, Soma, Phentermine, and Sibutramine. Other non-controlled drugs are listed on the website as well including Cialis, Propecia, Levitra, Cipro, Amoxicilin and many others. A



prescription is not needed to order any of these drugs from the rx-pharma24.com website or any of the other websites owned by the RXPHARMA group.

27.     7Search's customer profile for RXPHARMA lists an email address of larry@ph24management.biz. It shows RXPHARMA originally registered with 7Search on September 17, 2008. The contact name is listed as Juan Antonio Rios and shows a contact address in Buenos Aires, Argentina. 7Search records indicate that RXPHARMA has spent $762,582.63 in advertising since September 17, 2008.

28.     Information obtain from 7Search also includes a spreadsheet that listed the websites that have been registered to RXPHARMA. Those websites include www.rxpharma24hs.com, www.drugsale365.com, www.rxpharma-24.com, www.rxpharma24hs.com, www.rxpharma24-hs.com, www.e-painrelief.com, and others.

29.     After the search warrant was conducted, I, along with other agents from FDA-OCI and DEA, interviewed several 7Search employees.

30.     Employee-A, who is a 7Search employee that works with a number of the on-line pharmacy websites that advertise through 7Search, was interviewed on July 26, 2016. Employee-A stated that it appears that most of the on-line pharmacy websites target the United States, the United Kingdom, Canada, and Australia. He further stated that on-line pharmacies pay for their advertising using PayPal, credit cards, and wire transfers.

31.     Employee-A stated that an individual by the name of LARRY GEORGE, who is believed to be the owner/operator of RXPHARMA, previously visited 7Search in Chicago. Employee-A also stated that in June 2016, he and another 7Search employee, Employee-B, met with a representative from RXPHARMA named "Biff." Another individual, JAMES DUGGAN, who is believed to be a manager of RXPHARMA, set up the meeting between Biff and the 7Search employees. At the meeting, Biff explained that his name was really LUCIANO. The last name of LUCIANO is unknown. Employee-A also told law enforcement that a person



named SERGIO FERRARI used to work with RXPHARMA and that FERRARI had a company called SMILE PAYMENTS.

32. On August 23, 2016 "Biff Tannen" sent an email to Employee-A. The email was addressed from 01bifftannen@gmail.com. The email asked "How are you doing? Have a time for a meeting? Let me know which day of this week we could speak." It is signed by "Biff". It lists a Skype address of affiliate-manager1 along with emails 01bifftanner@gmail.com and affiliate-manager@phcenter.net.

33. On August 29, 2016, Employee-A had a conference call with "Biff" and GEORGE. The call was recorded. Legal counsel for 7Search summarized the meeting for the government since most of the conversation was in Spanish. During the call, GEORGE complained to Employee-A that he was disappointed in the web traffic he was getting from 7Search. GEORGE requested that Employee-A look at RXPHARMA's competitors to see where their traffic is coming from. GEORGE also asked Employee-A to figure out which keywords were working and which affiliates were driving traffic that is converting, so that RXPHARMA could target those traffic sources. Employee-A asked GEORGE which geographic locations were most important to target. GEORGE responded that the United States was the most important to target, but that RXPHARMA can do business worldwide. GEORGE stated that his two most important keywords were Xanax and Tramadol.[2] GEORGE stated that he was still making money outside of 7Search because his affiliates were still bringing business.

34. On September 20, 2016, Employee-A and Employee-B had another call with GEORGE and "Biff". The call was recorded. Spanish was primarily spoken during this meeting so 7Search's legal counsel summarized the meeting for the government. GEORGE wanted to create a "copycat" account for RXPHARMA that mirrored keywords, bids, and spend at the top of the active on-line pharmaceutical accounts that were converting on 7Search.

---

[2] Xanax and Tramadol are controlled substances that require a prescription.

9



GEORGE asked that GOLDPHARMA, another account that GEORGE controls, test new traffic sources that 7Search is able to identify.

35. On November 3, 2016, Employee-B had a Skype conversation with Biff Tannen. A transcript of the conversation follows:

[2:55:43 PM] *** [Employee-B] has shared contact details with Biff Tannen. ***

[2:56:02 PM] [Employee-B]: Good Afternoon Biff. How may I assist you?

[3:07:25 PM] Biff Tannen: Hi [Employee-B]!

[3:07:47 PM] Biff Tannen: how are you?

[3:16:44 PM] Biff Tannen: I want to talk about low traffic. We are not getting sales.

[3:17:28 PM] [Employee-B]: I am good! How are you. I have been marketing to my Publishers about the Pharma Traffic and getting them to send us more to monetize.

[3:21:06 PM] [Employee-B]: Do you want to get on a call? What keywords are low in volume right now for you?

[3:22:09 PM] Biff Tannen: I'm in a public place, I won't hear you very well

[3:22:15 PM] Biff Tannen: All keywords

[3:22:15 PM] Biff Tannen: xanax

[3:22:18 PM] Biff Tannen: valium

[3:22:19 PM] Biff Tannen: ativan

[3:22:20 PM] Biff Tannen: ambien

[3:22:36 PM] Biff Tannen: We have not getting good results

[3:22:51 PM] Biff Tannen: Do you know something about your old big affiliates? They were good

[3:24:43 PM] [Employee-B]: OK I will see what is going on and we will go from there. Thanx So Much! ~[Employee-B]

[3:25:13 PM] Biff Tannen: Ok, please keep in touch.

[3:25:20 PM] Biff Tannen: Thank you very much [Employee-B]! ;)



**2nd Skype conversation between Employee-B and "Biff Tannen" of rxpharma - Nov. 3, 2016**

[3:36:43 PM] [Employee-B]: As you know, I am always going after new Afiliates.  And I do the best that I can to let them know that we pay the best prices possible for good converting traffic of all types and keywords.

[3:53:55 PM] Biff Tannen: I see

[3:55:16 PM | Edited 3:55:36 PM] Biff Tannen: And is there any chance we can pay you for the contacts of your old and inactives affiliates? Maybe they don't want work paying for click and are looking for work directly with pharmacies.

[4:28:08 PM] [Employee-B]: I am not trying to be difficult but I don't think that would be appropriate for 7Search.  I think that the best way to approach this is for you to incrementally raise your Bids in increments of 10%.  Try to have a situation where this next week you raise your bids by 10%, then the next week 20% and so on.  If you bid high enough the Afiliates will supply you with traffic.  I know that this is the best way to proceed.  Since you have the tracking pixel implemented, you will know which sources are converting the best for you and which ones are not.  This is a long term stratedgy. ~[Employee-B]

36. On December 13, 2016, GEORGE sent Employee-A an email asking when they could talk.  Employee-A responded by email and suggested that they talk the next day.  GEORGE responded saying he would call 7Search tomorrow, that is Wednesday, December 14th, at 1pm to speak with Employee-A and Employee-B.[3]  On December 14, Employee-A and Employee-B waited for GEORGE's call, but GEORGE never call them.

37. I have reviewed 7Search records for payment information from many of its internet pharmacy advertisers, including RXPHARMA.  The records show that RXPHARMA has paid for their advertising in many ways, including by wire, check, credit card, and PayPal.  In the past they even directed their customers to direct their payments for drugs to 7Search.  Recently, RXPHARMA has paid for most of the advertising through PayPal.  The email addresses registered to these PayPal accounts are ramonaenibarra@gmail.com and jimmy_le5252@yahoo.com.

---

[3] This email exchange was originally in Spanish, and has been translated and summarized for purposes of this affidavit.

11



38.     7Search also provided email addresses they have used in the past to communicate with the RXPHARMA group. Those email addresses include smilepayments@gmail.com along with mktg@pharma24hs.com, mktg@ph24management.biz, larry@phcenter.net, james@ph24management.biz, yagy@ph24management.biz, james@phcenter.net, larry@mail-drugstore24hs.biz, and sergio@smilepayments.com.

39.     FDA-OCI asked LegitScript to conduct research on some of the websites that, according to 7Search records, were registered to the RXPHARMA group. LegitScript conducted their research and found they had previously researched this group for FDA-OCI in March 2012. LegitScript identifies the RXPHARMA group as INVESTRA-24HS. [For the purposes of continuity I will continue to reference this group as RXPHARMA as I understand it to be the same group that LegitScript refers to as INVESTRA-24HS.] LegitScript believes the RXPHARMA group consists of approximately 70 active websites. Thirty of the network websites are active online pharmacies. These websites market prescription drugs, including controlled substances, to the United States and other countries and do not require a prescription.

40.     Based on analysis of domain registration information and publicly available information, LegitScript identified SERGIO DAVID FERRARI as a potential operator of RXPHARMA. Publicly available information indicated that FERRARI operates FERRARI operates the e-commerce and payment processing website smilepayments.com. This information is consistent with the information Employee-A told me.

41.     According to LegitScript an "anchor" website is one that has a significant role in a network, such as payment processing, management, or affiliate recruitment and resources. The anchor websites for RXPHARMA can be broken down into two categories: affiliate portal websites, and websites that seem central to the organization's communications, referred to as management anchor websites. LegitScript identified affiliate-biff.com, affiliate-biff-2.com, affiliate-biff-4.com, affiliate-biff-5.com, affiliate-biff-6.com, affiliate-biff-7.com, and cash24hs.com



as affiliate portal anchor websites. LegitScript identified smilepayments.com, pharma24hs.com, ph24management.biz, and phchenter.net as management anchor websites.

42. Affiliate websites draw potential customers to their websites where they will have a banner to purchase a product. If that product is purchased from the affiliate website then the affiliate collects a commission on that sale.

43. According to LegitScript the Investra-24hs network affiliate program is branded as "Affiliate Biff" or "Biff's Affiliate Programs." Posts promoting this affiliate program appear on forums in English and Spanish. These posts provide additional contact details for the affiliate program including the email address bifftannen01@yahoo.com, skype: affiliate-manager1, and affiliate-manager@phcenter.net.

44. LegitScript submitted an inquiry regarding the affiliate program for RXPHARMA and received a response from 01bifftannen@gmail.com.

45. LegitScript analyzed the Domain Name System (DNS) information for some of the websites affiliated to RXPHARMA. These websites included websites that were provided by FDA-OCI based on the information provided by 7Searcg and other significant websites in the RXPHARMA group. The first website analyzed was rxpharm24.com. LegitScript described this website as an internet pharmacy website. The mail server is mail.rxpharma24.com. The Start of Authority (SOA) email address is networktech12@hotmail.com. Every domain must have a SOA record at the cutover point where the domain is delegated from its parent domain. The registrant name is Frank Duggins with a contact address in Moscow, Russia. His email address is listed as networktech12@hotmail.com as well. LegitScript believes this is a fake identity because the address used by the registrant is the same address as the Iranian embassy in Moscow.

46. The names Frank Duggins, Duggins Frank, and DugginsFrank, with the same Moscow address, have been used for domain name registrations with different email addresses. For example the same Moscow address was used with the email address

13

wondertechnology@aol.com to register sales-24hs.com. Duggins, with the email address networktech12@hotmail.com is also the registrant of onepharmatoday.com.

47. The domain name buyhealthymed.com is registered to Michael Smith, with the email address m07smith@gmail.com. This email address was identified in LegitScript's 2012 report on RXPHARMA as a possible alias of FERRARI or an associate. Many of the parked and offline websites in the domain name workup done by LegitScript are registered to m07smith@gmail.com using different registrant names and addresses.

48. The domain name trust-pharma24hs.com is registered to Rios Juan Carlos with an address in Buenos Aires, Argentina and the email address juancarlosrios1959@gmail.com. This website links to affiliate-biff.com.

49. The anchor website, cash24hs.com is registered to Michael Smith, with the email address m07smith@gmail.com.

50. The target websites rx-pharma24.com and rxpharm24.com are hosted on the IP address 198.144.159.236, on the IP address block 198.144.144.0 - 198.144.159.255, which is allocated to the North York, Ontario, Canada-based Internet service provider (ISP) Yesup Ecommerce Solutions, Inc. The additional RXPHARMA Internet pharmacy websites trust-pharma24hs.com and halfpricemeds24.com are hosted on the same IP address block. This IP address block also hosts affiliate-biff-2.com, affiliatebiff-4.com, affiliate-biff-5.com, affiliate-biff-6.com, affiliate-biff-7.com, and cash24hs.com, which LegitScript believes are affiliate portals for RXPHARMA. Because this IP address block hosts both affiliate portals and Internet pharmacy websites in the network, this IP address block appears to be a hub of RXPHARMA'S operations. Note, however, that websites that have domain names unrelated to pharmaceuticals are also hosted on the IP address block, and it appears it is not exclusive to the network.

51. According to LegitScript the target websites market prescription drugs, and appear to emphasize marketing drugs that are controlled substances in the U.S. The websites



list prices in U.S. dollars and state that their primary shipping service is the United States Postal Service.

52.    LegitScript identified a Reddit profile for a user promoting the website infotramadol.com in 2014, which was registered at that time to james@phcenter.com. This user stated that the drugs are shipped from Romania or India.

53.    Smilepayments.com offers services that can "help you with flexible solutions to collect your local e-commerce transactions". The website also states, "Smile Payments is uniquely placed to help business implement the intricacies of international e-commerce." "We specialize in integrating online payments, credit card processing and your website banking needs taking into account regulatory requirements." Smile Payments also offers to "help you in forming your legal and banking structure that will support the international e-commerce strategy." "Smile Payments Systems interacts between you (the Store) and the Credit Card Issuer of your Customer." Smile Payments charges two processing rates. They charge 3.75% for "Low-Risk Merchants" and 4.75% for "High-Risk Merchants." Examples of "High-Risk Merchants" listed on the website are adult content, online gambling (legal), health and wellness products, replica sales, travel, dating, call centers, and many more.

54.    On December 12, 2016, I purchased Tramadol from rxpharm24.com. According to 7Search records and LegitScript, rxpharm24.com is part of the RXPHARMA network. On January 3, 2017 I received at an undercover mailbox 30 yellow tablets in a box labeled Tradolan Retard from an address in the country of Romania along with a prescription from MU Dr. Ladislav Smrcek MD for this drug. Tradolan Retard is a foreign equivalent of Tramadol. I have never met or communicated with Dr. Ladislav Smrcek nor was I asked any questions when I attempted to purchase Tramadol from rxpharm24.com. This medication was purchased without a legitimate prescription making this drug misbranded. On January 27, 2017, I logged onto rxpharm24.com and the website is still actively selling prescription drugs.

15



55.     I previously sent a preservation letter on August 29, 2016 to the Providers requesting that all stored electronic communications associated with the TARGET EMAIL ACCOUNTS be preserved.  Consequently, there is probable cause to believe that evidence is still present at the Providers.

## CONCLUSION

56.     Based on the aforementioned factual information, I believe there is probable cause to believe, and I do believe, that evidence of the TARGET OFFENSES is located within the TARGET EMAIL ACCOUNTS, which constitute and contain items that constitute contraband, fruits, instrumentalities and evidence of crime, or material otherwise criminally possessed, or property that is or has been used as the means of committing the TARGET OFFENSES.  Accordingly, I respectfully request that this Court issue warrants authorizing the search of the TARGET EMAIL ACCOUNTS, for the items more specifically identified in Attachment A.

## REQUEST FOR SEALING AND NON-DISCLOSURE ORDER

57.     Each of the Providers is a provider of an electronic communication service, as defined in 18 U.S.C. § 2510(15), and/or a remote computer service, as defined in 18 U.S.C. § 2711(2). This Court has authority under 18 U.S.C. § 2705(b) to issue "an order commanding a provider of electronic communications service or remote computing service to whom a warrant, subpoena, or court order is directed, for such period as the court deems appropriate, not to notify any other person of the existence of the warrant, subpoena, or court order." Id.

58.     In this case a non-disclosure order and sealing of the warrants, applications, and affidavit would be appropriate because the warrants relate to an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation, and disclosure may alert the targets to the ongoing investigation.  There is reason to believe that notification of the existence of the warrants will seriously jeopardize the investigation or unduly delay a trial, including by giving targets an opportunity to flee or continue flight from prosecution, destroy or

tamper with evidence, change patterns of behavior, intimidate potential witnesses, or endanger the life or physical safety of an individual. See 18 U.S.C. § 2705(b). Some of the evidence in this investigation is stored electronically. If alerted to the existence of the warrants, the subjects under investigation could destroy that evidence, including information saved to their personal computers. Moreover, the obligation of nondisclosure should terminate in one year rather than a shorter period of time because the entire investigation is in its early stages, cyber-related investigations can be prolonged because cyberspace offers suspects numerous opportunities to hide their identity, and the United States has reason to believe that one or more of the targets and additional evidence is located overseas.

59. Accordingly, I respectfully request that the Court issue an Order directing the Providers not to disclose the existence or content of the warrants for a period of one year, except that the Provider may disclose the warrants to attorneys for the Providers for the purpose of receiving legal advice and as necessary to the Providers' employees for the sole purpose of compliance with and providing responsive information to the warrants. I also respectfully request that the search warrants, applications, this affidavit, and the non-disclosure orders be ordered sealed by the Court, until further order of the Court, except that copies of the search warrants may be provided to other law enforcements agents who are participating in this investigation and to the Providers so that the search warrants can be executed.

JAMES FORMICA
SPECIAL AGENT
FOOD AND DRUG ADMINISTRATION -
OFFICE OF CRIMINAL INVESTIGATION

Subscribed and sworn to before me this 7th day of March, 2017

/s/ Judge Joan G. Margolis
HON. JOAN G. MARGOLIS
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

### Particular Things to be Seized

I.  **Information to be disclosed by the provider listed on the search warrant**

For each account or identifier listed on the Search Warrant, and to the extent that the information is within the possession, custody, or control of the provider, including any emails, records, files, logs, or information that has been deleted but is still available to the provider, or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the provider listed on Search Warrant is required to disclose the following information to the government for the period from September 1, 2008 to the date this warrant is executed:

a. The contents of all e-mails associated with the account, including stored or preserved copies of e-mails sent to and from the account, draft e-mails, the source and destination addresses associated with each e-mail, the date and time at which each e-mail was sent, the size and length of each e-mail, and any and all attachments to each e-mail;

b. All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers and other identifiers, records of session times and durations, the date on which the account was created, the length of service, the IP address used to register the account, log-in IP addresses associated with session times and dates, account status, alternative e-mail addresses provided during registration, methods of connecting, log files, and means and source of payment (including any credit or bank account number);

c. The types of service utilized;

d. All records or other information stored at any time by an individual using the account, including address books, contact and buddy lists, calendar data, pictures, and files; and

e. All records pertaining to communications between the provider and any person regarding the account, including contacts with support services and records of actions taken.

## II. Information to be seized by the government

For the period from September 1, 2008 to the date this warrant is executed:

a. All information described above in Section I, including photographs, images, videos, correspondence, communications, records, documents, electronic mail, electronic messages, chats, chat logs, notes, financial information, and other data or materials, in any format, that constitute fruits, evidence and instrumentalities of the following crimes related to the sale, distribution, and dispensing of prescription drugs over the Internet:

1. introduction of misbranded drugs into interstate commerce, in violation of 21 U.S.C. §§ 331(a) and 333(a),
2. delivering, distributing or dispensing controlled substances by means of the internet, in violation of 21 U.S.C. §§ 841(h) and 829(e),
3. conspiracy to violate the Controlled Substances Act, in violation of 21 U.S.C. § 846,
4. smuggling of goods into the United States, in violation of 18 U.S.C. § 545,
5. money laundering, in violation of 18 U.S.C. § 1956(a)(1), and
6. conspiracy to commit any of the forgoing crimes, in violation of 18 U.S.C. § 371.

b. Evidence of who used, accessed, owned, controlled, created, or communicated with the account or identifier listed on the Search Warrant, including financial records and records that help reveal the whereabouts of such person(s).

c. Evidence indicating how and when the account or identifier listed on the Search Warrant was accessed or used;

d. Evidence indicating the account user's or users' state of mind as it relates to the crimes under investigation; and

e. Passwords and encryption keys, and other access information that may be necessary to access the account or identifier listed on the Search Warrant.

19